UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CALECHUS WILLIAMS                                                                              PLAINTIFF

v.                                                                           CIVIL ACTION NO. 3:11cv613-DPJ-FKB

VANDERBILT MORTGAGE &                                                                        DEFENDANTS
FINANCE, INC., et al.

ORDER

This diversity case is before the Court on a number of dispositive motions:  Defendant First American Title Company, Inc.'s Motion for Summary Judgment [116]; Defendant Vanderbilt Mortgage & Finance, Inc.'s Motion for Summary Judgment [118]; and Plaintiff's Motion for Partial Summary Judgment [123].  Because the Court concludes that Williams cannot establish that any actions by Defendants caused her injuries, Defendants' motions are granted and Plaintiff's motion is denied.

I.      Facts and Procedural History

Plaintiff Calechus Williams owned and lived on a six-acre tract of land in Holmes County, Mississippi.  In 2006, Williams's parents obtained a loan through defendant Vanderbilt and secured that loan with a deed of trust on a parcel of land that included some of the land owned by Williams.  Defendant First American's subsidiary issued a title insurance policy on the deed of trust to Vanderbilt.  Neither Vanderbilt nor First American discovered that a portion of the land Vanderbilt's deed of trust encumbered actually belonged to Williams.

In late summer 2008, Williams defaulted on an existing mortgage obligation to Tower Loan.  In September 2008, Williams went to Freedom Homes, a retail seller of mobile homes, intending to obtain a single new loan through Freedom Homes that would both finance the

purchase of a new home and refinance the Tower Loan obligation that was in default. Sometime in mid-September 2008, Williams says she learned from Freedom Homes that her parents' deed of trust to Vanderbilt showed up on a title search for her land and that Freedom Homes could not proceed until the Vanderbilt deed was removed from her property. On September 24, 2008, Tower Loan recorded a notice of foreclosure on Williams's six-acre tract. The notice provided that a foreclosure sale would take place on October 27, 2008. Williams's property was sold at a foreclosure sale that date.

Williams filed this lawsuit against Vanderbilt and First American on September 1, 2011, asserting claims for negligence and gross negligence. Williams alleges she was unable to secure financing to rectify the default on her Tower Loan obligation because the Vanderbilt deed was negligently placed on her property. She alleges that Defendants' actions caused her to lose her real property, lose the use and enjoyment thereof, suffer from inconvenience and embarrassment, and suffer irreparable harm to her credit rating. In essence, Williams claims that Defendants' alleged negligence caused her property to be foreclosed upon. She seeks $1,000,000.00 in actual and punitive damages. Following the close of discovery, the parties filed their dispositive motions. The matters raised have been fully briefed, and the Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

III.    Analysis

Williams's claims sound in negligence. "The elements of a negligence suit, which are well-settled in Mississippi, are duty, breach of duty, causation, and injury." *Entrican v. Ming*, 962 So. 2d 28, 32 (Miss. 2007) (citations omitted). Defendants raise a number of somewhat complicated legal arguments regarding these elements, but the Court need not address them all because there has been no showing of causation. *See Celotex Corp.*, 477 U.S. at 322 (holding that summary judgment is mandated "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

To prove causation, a plaintiff must show that the defendant's negligence "was the proximate cause of the injury," which "requires the plaintiff to show that the defendant's conduct was the cause in fact and the legal cause of the plaintiff's injury." *Huynh v. Phillips*, 95 So. 3d 1259, 1263 (Miss. 2012) (citation omitted). "Cause in fact means that, but for the defendant's negligence, the injury would not have occurred." *Id.* (citation omitted). And "negligence will be deemed the legal cause if the injury 'is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act.'" *Id.* (citation omitted).

Williams theorizes that but for the negligently placed lien, Freedom Homes would have paid off her Tower Loan mortgage, and she would have avoided foreclosure. Pl.'s Mem. [124] at 25. She supports this argument with a single piece of evidence: "the statement[] of the Freedom Homes employee, whom Plaintiff believes was called Jenae." Pl.'s Resp. [138] at 8. Williams was asked in her deposition to describe that conversation and gave the following response:

> I received a call. [The caller] said, "Well, Ms. Williams, you've been approved for your loan, but you have a lien on your land by Vanderbilt Mortgage." And I told them, "No, Tower Loan." They said, "No, it's Vanderbilt Mortgage." And they said, "We can't, you know, proceed any farther until you can get that cleared up."
>
> Q. Who called you from Freedom?
>
> A. She had a funny name. Jenae. It was one of the sales ladies.
>
> . . .

>    A. . . . I'm trying to think. She has a funny name, Jenae, something like that.

Williams Dep. [116-4] at 31.

In their initial summary-judgment memoranda, Defendants argue—and Williams does not dispute—that "Jenae's" statements constitute hearsay if offered for their truth and presented merely through Williams's testimony. Fed. R. Evid. 801(c) (defining hearsay). They further observe that hearsay is not sufficient to defeat summary judgment. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *id.* advisory committee notes to 2010 amendments ("The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (holding that newspaper articles constitute hearsay and are not proper summary-judgment evidence). Defendants are correct on all fronts.

The burden then fell to Williams to establish an exception to the rule against hearsay, a burden she attempts to meet with a post-deposition affidavit again describing the September 2008 conversation with "Jenae":

> When Jenae called me, she told me that she had just learned that the deed of trust executed by my parents in favor of Vanderbilt Mortgage & Finance, Inc. was going to prevent Freedom Homes from proceeding with my loan although I had otherwise been approved. She stated that, because we were trying to beat the foreclosure deadline, she immediately called me to tell me what she had been told so that I could have the Vanderbilt lien removed and First Tower Loan could be paid off.

Williams Aff. [138-1] ¶ 7. And based on this new affidavit, Williams asserts that "Jenae's" statements are admissible (1) as a present-sense impression under Rule 803(1); (2) as a statement

5

against interest under Rule 804(b)(3); or (3) due to relevant "circumstantial guarantees of trustworthiness" under Rule 807.[1]

Assuming Williams's affidavit should be considered, it actually makes the evidence less reliable. Unlike her deposition testimony, Williams reveals that the unidentified person she thinks was named "Jenae" called "to tell [Williams] *what she had been told* . . . ." Williams Aff. [138-1] ¶ 7 (emphasis added). As Vanderbilt observes in reply, "[w]e do not know who, if anyone, told the unknown Freedom Homes' employee that the Plaintiff was ineligible for a loan with Freedom . . . ." Def.'s Reply [145] at 5. We do not even know, without assumption, that this second unidentified person was a Freedom Homes employee, and cannot test the accuracy of the information he or she may have conveyed to "Jenae" as then relayed to Williams and eventually recounted in Williams's affidavit. This constitutes hearsay within hearsay, yet there is no effort to establish an exception for the initial statement to "Jenae." See Fed. R. Evid. 805.

As a related matter, the fact that "Jenae" conveyed what she was "told" by some other unidentified person begs the question whether "Jenae" spoke from personal knowledge. See Fed. R. Evid. 602. "In the context of hearsay, the declarant must also have personal knowledge of what she describes." *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995) (citing Fed. R. Evid. 803 advisory committee note to 1972 proposed rules ("In a hearsay situation, the declarant is, of

---

[1] "The nonmoving party cannot defeat a summary judgment motion by attempting to create a disputed material fact through the introduction of an affidavit that directly conflicts with his prior deposition testimony." *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 233 n.9 (5th Cir. 1984). While Defendants are correct that the affidavit adds critical details to the previous deposition testimony, the affidavit does not seem to "directly conflict[]" with the testimony. *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (refusing to consider affidavits that "impeach[], without explanation, sworn testimony"). The Court will assume without deciding that the affidavit may be considered.

course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge."); 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 803(1)[01], at 803-93 (1994) (other citations omitted)); *see also United States v. Polidore*, 690 F.3d 705, 720 (5th Cir. 2012) (holding statements admissible under Rule 803(1) because they related to declarant's personal observations).

Even assuming Williams could overcome the hearsay nature of the initial declaration, she has not shown that "Jenae's" statements meet the requirements of the three exceptions she invokes.  The Court will address each in turn.

      A.        Present-Sense Impression

Rule 803(1) excepts from the rule excluding hearsay "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." The rationale is that when events and statements regarding them are "almost simultaneous[], there is almost no likelihood of a deliberate or conscious misrepresentation." *Polidore*, 690 F.3d at 720 (citations and punctuation omitted).

The only evidence suggesting that "Jenae" made her statement "while or immediately after" being told the loan could not proceed comes from Williams's own self-serving affidavit—signed a full five years after the conversation—in which she parrots the language of Rule 803(1).  But the Fifth Circuit has "repeatedly held that self-serving affidavits, without more, will not defeat a motion for summary judgment." *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 F. App'x 306, 309 (5th Cir. 2011) (citation omitted).

The affidavit also fails to adequately establish the length of time that elapsed between "Jenae's" conversation with the other unidentified declarant and the telephone call with

Williams.  "[T]he time requirement underlying the exception is strict because it is *the* factor that assures trustworthiness." *United States v. Green*, 556 F.3d 151, 155 (3d Cir. 2009) (citations and internal quotations omitted).  Indeed, one commentator notes that the contemporaneousness requirement must be "strictly construed and narrowly applied."  Glen Weissenberger & James J. Duane, Weissenberger's Federal Evidence § 803.3 (7th ed. 2011); *see also Hankins v. Ford Motor Co.*, No. 3:08-CV-639-CWR-FKB, 2012 WL 174793, at *2 (S.D. Miss. Jan. 20, 2012) (requiring statement's proponent to "introduce evidence on the length of time that elapsed between the discovery of the condition and its reporting . . .").

Here, Williams states that "Jenae" told her she had "just learned" of the deed and she called Williams "immediately."  Williams Aff. ¶ 7.  While this description of the conversation employs the precise language found in Rule 803(1), there is no way to know or verify exactly how much time actually passed.  More significantly, there is no way to know whether "Jenae" had time for reflection and possible fabrication.  *See Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08–cv–313–WCB, 2012 WL 2595275, at *8 (E.D. Tex. July 5, 2012) (rejecting admissibility of statement because proof of contemporaneousness was fatally "impreci[e]").  "Jenae's" hearsay statement is not admissible under Rule 803(1).[2]

B.    Statement Against Interest

Williams contends that "Jenae's" statements are admissible as statements against interest. If the declarant is unavailable within the meaning of Rule 804(a), then "[a] statement that . . . a

---

[2] As noted above, "Jenae's" statement was the second hearsay statement.  Presumably the first unidentified declarant would have gained the information regarding the lien in some way, but that event is not revealed.  Nor do we know the amount of time that passed between that unidentified event and the conversation with "Jenae."

reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest" is admissible under Rule 804(b)(3). This rule does not apply because the record fails to establish that "Janae" was unavailable or that the statement was against her interests.

Rule 804(a)(5) deems a declarant unavailable if the "proponent [of the evidence] has not been able, by process or other reasonable means, to procure . . . the declarant's attendance or testimony." It appears that Williams's search for "Jenae" was limited to internet searches and a subpoena to Freedom Homes for Williams's loan application records. Gordon Aff. [136-2] ¶¶ 5, 6. The record does not suggest that Williams or her attorney contacted Freedom Homes to otherwise identify an employee named "Jenae," or that Williams sought the 30(b)(6) testimony of Freedom Homes. The Court is not convinced that Williams has established that she was unable, by "reasonable means," to procure "Jenae's" testimony. *See United States v. Aguilar-Tamayo*, 300 F.3d 562, 566 (5th Cir. 2002) (explaining that proponent has the burden to take some "steps to secure the presence" of the witness under Rule 804(a)(5)).

Assuming Williams could establish that "Jenae" is unavailable within the meaning of Rule 804(a)(5), Williams must show the statements were damaging to "Jenae." As the plain language of the rule demonstrates, the statements must be "contrary *to the declarant's* proprietary or pecuniary interest." Fed. R. Evid. 804(b)(3) (emphasis added). The commentary to the 1972 proposed rule explain, "The circumstantial guaranty of reliability for declarations against interest is the assumption that persons do not make statements which are damaging *to themselves* unless satisfied for good reason that they are true." *Id.* advisory committee notes to 1972 proposed rules

9

(emphasis added) (citation omitted). So the only interests that matter in this context are "Jenae's."

Williams attempts to meet this challenge by arguing that "it is axiomatic that the statement would be against Jenae's pecuniary interests. Without the sale, she and Freedom Homes stood to lose a significant amount of money." Pl.'s Resp. [138] at 9. But this conclusory assertion cannot overcome the lack of record evidence identifying "Jenae," her position, or her pecuniary interest in Williams's loan.

Finally, even assuming "Jenae" could have profited, the statements themselves were not contrary to her interests. As recounted by Williams, "Jenae" told her about the lien to "beat the foreclosure deadline . . . ." Williams Aff. [138-1] ¶ 7. In other words, "Jenae's" comments, as relayed twice by Williams, suggest an effort to salvage the deal. That is not the sort of statement that is "so contrary" to the declarant's pecuniary interests that it would not be said if not true. Fed. R. Evid. 804(b)(3); *cf. United States v. Martino*, 648 F.2d 367, 391 (5th Cir. 1981) ("[T]he statement against interest must be almost a direct, outright statement that the person was legally at fault."); *In re Oil Spill*, MDL No. 2179, 2012 WL 423862, at *6 (E.D. La. Feb. 8, 2012) (citing *Martino*). The statement-against-interest exception does not apply.

    C.    Residual Hearsay Exception

Finally, Rule 807 provides the residual exception to the rule against hearsay, and permits admission of a hearsay statement if:

    (1) the statement has equivalent circumstantial guarantees of trustworthiness;

    (2) it is offered as evidence of a material fact;

>   (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>
>   (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a). In order for a statement to be admissible under Rule 807, the proponent must "give[] an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it." *Id.* R. 807(b). At least one court in the Fifth Circuit has held that "exacting compliance with the technical [notice] requirements of Rule 807 is not mandated, where conformity is impossible and the purpose of the rule has been satisfied."[3] *Hicks v. Charles Pfizer & Co., Inc.*, 466 F. Supp. 2d 799, 810 (E.D. Tex. 2005) (collecting cases).

The residual hearsay exception "must be used sparingly," and testimony should be admitted thereunder "only if the reliability of the evidence equals or exceeds that of the other exceptions to the hearsay rule." *Nowell v. Universal Elec. Co.*, 792 F.2d 1310, 1315 (5th Cir. 1986) (citation omitted). Williams does not separately address the first prong of the Rule 807 analysis—the out-of-court statement's trustworthiness—instead asserting that "the circumstantial guarantees of trustworthiness are as high as those under the 804(b)(3) exception." Pl.'s Resp. [138] at 11. Apparently, Williams's argument is that "Jenae's" statement is sufficiently trustworthy because it was made against her interest. But as the Court has already explained, the

---

[3] Of course, the Court is not convinced that conformity with the notice requirements is impossible given the ruling on "Jenae's" availability.

statement does not qualify as a statement against interest. Williams's failure to demonstrate the trustworthiness of the hearsay is fatal to her Rule 807 argument.[4]

In sum, the sole piece of evidence tending to support the causation element of Williams's claims is inadmissible hearsay. No exception to the rule against hearsay applies. Because Williams "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," Defendants are entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 322

## IV. Conclusion

The Court has considered all of the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendant First American Title Company, Inc.'s Motion for Summary Judgment [116] is granted; Defendant Vanderbilt Mortgage & Finance, Inc.'s Motion for Summary Judgment [118] is granted; and Plaintiff's Motion for Partial Summary Judgment [123] is denied. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 8th day of November, 2013.

               s/ *Daniel P. Jordan III*
               UNITED STATES DISTRICT JUDGE

---

[4] As addressed more fully above, this evidence lacks trustworthiness for a variety of reasons.